# Mullins v. Commonwealth.

(Decided March 22, 1935.)

WILLIAMS & DENNEY for appellant.

BAILEY P. WOOTTON, Attorney General, RAY L. MURPHY, Assistant Attorney General, J. M. KENNEDY, JOEL M. JONES and ROBT. B. BIRD for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

At the April term, 1934, of the Rockcastle circuit court, the appellant, Ollie Mullins, was placed upon trial for the murder of Roscoe Morris. After the case had been submitted to the jury for its verdict, the following order was entered by the court:

"The jury in the above styled case having returned into open court pursuant to adjournment, and after

the juror, Ed Ballard, had been sworn by the court, made the following statement, viz: That on Friday night after the jury had been empaneled and sworn and at a time when the jury had been taken by the sheriff of Rockcastle County to the Rockcastle Hotel to a room where they were kept for the night; that he, the said Ballard, left said room alone and went down upon the streets of Mt. Vernon and across the streets to a restaurant where he stayed for some time and later returned to the room occupied by the jurors; that during his absence from the other jurors, he was not guarded by the sheriff or any of his deputies or guard of any kind. It is, therefore, ordered by the court that the jury in this case, because of said separation, be discharged and this case continued to the next term of this court."

When the case was called for trial at the next term of court, the defendant filed a motion setting out the proceeding and stating that it was over his protest, objection, and exception that the court had dismissed the jury and continued the case, and by reason of which facts he had been put in jeopardy and was entitled to have the prosecution dismissed, and so prayed. So far as the record discloses, this motion was ignored by the court. The trial continued, and the defendant was found guilty and sentenced to life imprisonment. On this appeal, several grounds are urged as authorizing a reversal of the judgment, but it is necessary to consider only the plea of former jeopardy.

Section 13, a portion of the Bill of Rights, of our Constitution, provides: "No person shall, for the same offense, be twice put in jeopardy of his life or limb."

This expresses a doctrine so ancient that it is impossible to trace its origin. It seems always to have been imbedded in every system of jurisprudence, as it is "a part of the universal law of reason, justice and conscience." 16 C. J. 233; Nolan v. State, 55 Ga. 521, 21 Am. Rep. 281; Stout v. State, 36 Okl. 744, 130 P. 553, 45 L. R. A. (N. S.) 884, Ann. Cas. 1916E, 858; Rogers v. Commonwealth, 257 Ky. 495, 78 S. W. (2d) 340. The view has been taken that jeopardy does not attach until there is a verdict, but it is now quite uniformly regarded as attaching when the jury is impaneled and sworn. Commonwealth v. Olds, 5 Litt. (15 Ky.) 137; O'Brian v. Commonwealth, 9 Bush (72 Ky.) 333, 15 Am. Rep.

715; Williams v. Commonwealth, 78 Ky. 93; Robinson v. Commonwealth, 88 Ky. 386, 11 S. W. 210, 211, 10 Ky. Law Rep. 972; Commonwealth v. Gray, 249 Ky. 36, 60 S. W. (2d) 133. Notwithstanding the unqualified language of the Constitution, to prevent frustration, and in deference to the necessities of justice, the courts with practical unanimity have engrafted exceptions upon it. Thus we have the interpretation that the grant of immunity is in its nature only a restraint on the courts; that the Constitution does not promise a man protection if his second jeopardy attaches by reason of his own act, but does promise him protection if it arises from the act of another. So if a mistrial was caused by the accused, his plea of former jeopardy will not be heard. It may have been in consequence of his own wrong or request, or by his consent. Robinson v. Commonwealth, supra; Riley v. Commonwealth, 190 Ky. 204, 227 S. W. 146; Commonwealth v. Gray, supra; 16 C. J. 254, 255.

So, also, the courts recognize that the force of necessity is "a power which no combination of men can successfully oppose and that it overrides all human laws, even our written constitutions." Bishop's New Criminal Law, sec. 1035. If there is any legal necessity for discharging the jury, the right of the court to order a mistrial on that ground exists without the defendant's consent. State v. Thompson, 58 Utah, 291, 199 P. 161, 38 A. L. R. 697. "In order, however, to justify an exercise of this power, the occasion for it must be very cogent, or, as some courts have said, there must be an absolute necessity." 8 R. C. L. 153. See, also, 16 C. J. 250; Roberson's Criminal Law, sec. 123.

Concerning the discharge of the jury before the end of the trial, it is stated in Robinson v. Commonwealth, supra:

"It must always be understood, however, that if the dismissal be from necessity, it does not operate as a bar to a further prosecution. This is necessary to the proper administration of justice."

And it is pertinently said in Yarbrough v. Commonwealth, 89 Ky. 151, 154, 12 S. W. 143, 144, 11 Ky. Law Rep. 351, 25 Am. St. Rep. 524:

"One trial, and only one, is an elementary principle in criminal law. Any other rule would be tyranny in a free country. It therefore has constitutional

sanction. Exceptions exist, from necessity, to the rule, but they should be few, and strictly guarded. They arise most frequently in cases where trials are begun, but not ended. Undoubtedly jeopardy may attach without waiting for a verdict. In a combat intended to be deadly, it cannot well be said one is not in danger until he is hit. If, however, a necessity exists for the discharge of the jury before the finding of a verdict, then the proper administration of justice requires that this should constitute an exception to the general rule. To allow one charged with crime, however heinous, to go free because the jury had to be discharged by reason of the illness of a member of it, or the sudden sickness of the judge, would be a defeat of the end sought, at the expense of reason. This necessity may arise in various forms. One is a mistrial from a failure of the jury to agree.''

See, also, O'Brian v. Commonwealth, supra; Williams v. Commonwealth, 78 Ky. 93; Sacra v. Commonwealth, 123 Ky. 578, 96 S. W. 858, 29 Ky. Law Rep. 1010; Riley v. Commonwealth, 190 Ky. 204, 227 S. W. 146.

What is to be deemed a necessity must obviously be left open, for who can preconceive the multifarious conditions arising when the human element is the factor? The decisions must be confined to the given cases. It must be determined in each case whether or not the circumstances necessitate the discharge of the jury. Even when there was repetition of the exact conditon, or a presentation of analogous circumstances, the judicial minds have not always agreed. Wharton's Criminal Law, sec. 394, lists a number of instances where the discharge of the jury was held to be necessary, and hence that jeopardy did not attach. See, also, Roberson's Kentucky Criminal Law, sec. 122; 16 C. J. 251; State v. Hansford, 76 Kan. 678, 92 P. 551, 14 L. R. A. (N. S.) 548; annotations, 38 A. L. R. 706.

The Legislature undertook by the enactment of what are sections 243 and 252 of the Criminal Code to provide that the dismissal of a prosecution and discharge of the jury during the progress of a trial or after submission should not be a bar to another trial, but those provisions were long ago held unconstitutional in so far as they attempt to authorize a dismissal of

an indictment for felony after jeopardy attached. Williams v. Commonwealth, supra; Robinson v. Commonwealth, supra. However, section 251, Criminal Code of Practice, provides that if after retirement a juror becomes so sick as to prevent the continuance of his duty, or other accident or cause occur preventing the jury from being kept together, or if there is no probability that the jury can agree upon a verdict, the court may discharge them; or if a juror becomes sick temporarily, the court may permit him to separate from the others. This does not define or enumerate all the causes upon the happening of which the power of the court may be exercised. The statute is only intended as an adoption of the legal rule that a case of actual necessity must exist before the jury can be discharged. O'Brian v. Commonwealth, supra.

While attempts to say what is to be regarded as creating a necessity have not been satisfactory, it may be generally stated negatively that an order of mistrial is not necessary if the occurrence is a matter that could be waived by the accused and which would not, ipso facto, vitiate any verdict that might be returned. In 16 C. J. 253, it is written:

> "At common law, where the jury separated after retiring, they might be discharged and a new jury sworn, by whom the accused might then be tried; and this rule has been followed in some of the states. In other states, however, it has been held that where a jury disperse or separate after they have retired to make up their verdict, such circumstance does not authorize their discharge, and if they are discharged a plea of former jeopardy should be sustained in a subsequent prosecution. Where, even with the consent of accused, the separation of the jury is permitted before they retire, and on reassemblage any of them are missing, and the jury are discharged for this reason, he afterward may plead former jeopardy."

Let us look to our precedents, which on the facts are only analogous but on the principle are controlling. Our leading case is O'Brian v. Commonwealth, 9 Bush (72 Ky.) 333, 15 Am. Rep. 715. After the introduction of witnesses, a juror disclosed that he had been a member of the grand jury which returned the indictment. On his own motion and over the objection of the

defendant, the court discharged the juror and summoned another in his place. The trial proceeded to a verdict of guilty. It was held on appeal that the trial court had erred in discharging the juror because the defendant could have waived his disqualification, but that the discharge of the jury did not operate as an acquittal. O'Brian v. Commonwealth, 6 Bush (69 Ky.) 563, 564. Upon another trial the accused was again found guilty and sentenced to death. On that appeal the former opinion was overruled in effect. It was pointed out that the defendant had had no opportunity at the former hearing to present his special plea of jeopardy, but conceding that the question had been properly presented, yet he was entitled to his rights. Upon an exhaustive consideration of the subject, it was held that the first trial constituted jeopardy and the discharge of the jury worked an acquittal. Accordingly, the judgment was reversed and directions given to discharge the accused from custody. O'Brian v. Commonwealth, 9 Bush (72 Ky.) 333, 15 Am. Rep. 715. Nearly fifty years later, the exact occurrence was again presented to the court in a rape case. Riley v. Commonwealth, 190 Ky. 204, 227 S. W. 146, 147. When the disclosure was made the court conferred with counsel as to what he should do and the attorney for the defendant, after consulting his client, told the court to take whatever course he thought was proper. This was regarded as an implied concurrence, and without objection the court discharged the disqualified juror and called another who was accepted by the defendant, and the trial proceeded to a verdict of guilty. A plea of former jeopardy was made. In holding the plea to have been properly disallowed, we said:

"Service on the grand jury which found the indictment does not render the discharge of the juror a necessity; it merely raises a question of implied bias, which accused may challenge or waive. * * *

"To authorize the discharge of a duly impaneled jury before verdict, a manifest necessity therefor must exist, and a plea of former jeopardy will not avail where such necessity exists. However, the discharge of a jury for a reason legally insufficient without accused's consent and without an absolute necessity for it is equivalent to an

acquittal and may be pleaded as a bar to subsequent proceedings: * * * If a jury is discharged during trial with the prisoner's concurrence, his consent thereto is an implied waiver of any objection to being tried anew and he may be so tried. So his consent to the discharge may appear as well by implication from the circumstances as by express words.''

In Hilbert v. Commonwealth, 51 S. W. 817, 21 Ky. Law Rep. 537, it was disclosed that during the night when a jury was being kept together, one of them became dangerously sick and on advice of his doctor he was taken home. The defendant being unwilling to fill the panel and go on with the trial, the court discharged the jury and continued the case. This was held to be a case of necessity. The court said:

"The act of the sheriff in letting the sick juror separate from the others did not discharge the jury. The trial might have proceeded, if the attendance of the juror could have been secured; and, when it could not be secured, the court properly discharged the panel.''

In Hopkins v. State, 6 Ga. App. 403, 65 S. E. 57, where the jury dispersed before the verdict by permission of the bailiff having them in charge, contrary to the court's order, thereby occasioning a mistrial, it was held that the defendant had been put in jeopardy which operated as an acquittal.

See, also, Hilands v. Commonwealth, 111 Pa. 1, 2 A. 70, 56 Am. Rep. 235; and State v. Ward, 48 Ark. 36, 2 S. W. 191, 3 Am. St. Rep. 213, which are digested in notes, 38 A. L. R. 718, Bishop's New Criminal Law, sec. 1038; Pizano v. State, 20 Tex. App. 139, 54 Am. Rep. 511; Wright v. State, 5 Ind. 290, 61 Am. Dec. 90; Wright v. State, 7 Ind. 324.

Returning to the case in hand. It has been the consistent rule of practice that, when a defendant learns of the separation of the jury during the course of his trial, he is under the duty of making prompt and seasonable objection. Unless he does so, he will be deemed to have waived his right to object. Wilson v. Commonwealth, 243 Ky. 333, 48 S. W. (2d) 3. So when the separation of the juror in the instant case came to the defendant's knowledge, his silence should have been

536

and must now be construed as a waiver and an implied consent that there should be no interruption of his trial. Consequently, a necessity for discharging the jury did not exist, and the court was not authorized to declare a mistrial.

Although it is stated in the motion to dismiss the prosecution on account of former jeopardy that the discharge of the jury was over the defendant's objection, that is not shown by the bill of exceptions and may not be regarded. The record available for our consideration is simply the order of the court which we have copied, and it makes no reference to the attitude or action of the defendant at the time. We consider the case as if he remained silent. The adage, "Silence gives consent," is not always true. It is fallacious when there is no duty to speak. Thus it is a fundamental and familiar rule of practice in a criminal trial that the defendant does not have to object to erroneous instructions. He may avail himself of such an error, although he remained silent. So is the effect of his silence in the matter of the discharging a jury either on motion of the prosecutors or by the court, sua sponte. 16 C. J. 255; State v. Richardson, 47 S. C. 166, 25 S. E. 220, 36 L. R. A. 238; Bishop's New Criminal Law, sec. 998. The learned author of Bishop's New Criminal Law states that if the judge wrongfully orders a discharge of the jury, the prisoner takes his discharge likewise by operation of law. Section 1038.

In Robinson v. Commonwealth, supra, when the court set aside the jury there was no express consent by the defendant nor any circumstances from which consent could be properly implied. He remained silent. Said the court:-

"The rule should not be extended so far as to require him, for the protection of this organic right to object to the action of the court."

In Riley v. Commonwealth, supra, we construed the statement of counsel to the court that he could take whatever course he thought proper as being an implied consent to discharging the juror, but observed, "Had accused remained silent, a different question would be presented."

The conclusion is inevitable that the appellant can-

not be held to have consented to the withdrawal of his case from the jury because he did not offer any objection to such course, especially where he was not asked if he had any objection.

There remains the consideration of section 164 of the Criminal Code of Practice providing that the defense of jeopardy must be by a plea in the form outlined. A distinction is to be recognized where the plea rests on grounds extrinsic of the record in which the right to the protection is to be found. The defense may be raised by motion where the accused has been in jeopardy under the same indictment on which the conviction is sought; but when he has been previously tried and another indictment found the court is not presumed to know of the former trial unless it is made to appear by plea and proof. Commonwealth v. Daniel, 9 Ky. Op. 96; Commonwealth v. Gray, 249 Ky. 36, 60 S. W. (2d) 133. It is a generally recognized exception to the rule requiring the issue of former jeopardy to be raised by a special plea that where the record itself discloses all the facts upon which the claim is based it may be by motion. In such cases when the matter is brought to the attention of the court judicial notice of the facts contained in the record then before the court will be taken, thereby rendering a plea containing the same facts unnecessary and superfluous. The right to exemption from further prosecution is prima facie shown in the record. Section 1035, Bishop's New Criminal Law; 16 C. J. 286; Annotations, L. R. A. 1917A, 1234. Cf. Newton v. Commonwealth, 198 Ky. 707, 249 S. W. 1017. The appellant presented his plea of immunity by a written motion and again called the court's attention to the jeopardy when he submitted the error of the court in rejecting it as a ground for a new trial. While the plea was ignored by the court, the motion to set aside the verdict and grant the defendant another trial on this account was overruled.

Although the appellant vigorously insists upon his innocence, and that the verdict is flagrantly against the evidence, we have not gone into the record. Be an accused person ever so guilty, the commonwealth must inflict punishment only in a legal and constitutional way. Nothing gives more strength to and confidence in the judiciary than an adherence to these ancient and constitutional principles affecting the lives, liberties,

and rights of the people. The constitutional conscience imperiously demands it.

On the showing made in this record, the trial court should have sustained the plea of former jeopardy and dismissed the prosecution.

Wherefore, the judgment is reversed and the case remanded for proceedings consistent with this opinion.

Whole court sitting.